UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2026 SEP -3 A 9:03
U.S. DISTRICT COURT
DISTRICT OF MASS.

JIUZHOU WANG,
Plaintiff,

v.

TCM GROUPS INC.; JINSONG XING; and SHANGHAI XIHUA SCIENTIFIC CO., LTD.,
Defendants.

*Civil Action No. 1:26-cv-13710-WGY*

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jiuzhou Wang, proceeding pro se, brings this Complaint against Defendants TCM Groups Inc. ("TCM"), Jinsong Xing ("Xing"), and Shanghai Xihua Scientific Co., Ltd. ("Shanghai Xihua") (collectively, "Defendants"), and alleges as follows:

# NATURE OF THE ACTION

This is principally an action for monetary damages arising from Defendants' failure to provide executive compensation promised to Plaintiff as a material inducement for him to leave a senior position at ImmunoGen, Inc. and join TCM Groups Inc. in 2022. The principal compensation at issue consists of equity-based compensation contractually guaranteed to have a minimum aggregate value of $3,000,000 upon full vesting, together with unpaid annual bonus compensation. Plaintiff also asserts related claims for declaratory relief and violation of the Massachusetts Wage Act arising from the same course of conduct.

Under a written Offer Letter co-signed by Defendant Jinsong Xing in his capacity as Chairman, legal representative, and General Manager of Defendant Shanghai Xihua Scientific Co., Ltd., Plaintiff was promised a stock option equivalent to 1.5% ownership of Xihua Clinical Services Co., Ltd., a stock option in Shanghai Xihua, and a contractual guarantee that the combined position would be worth no less than $3,000,000 upon full vesting. More than four years later, and more than two years after Plaintiff satisfied the contract's first vesting milestone, Defendants have never issued a grant agreement, formally documented Plaintiff's contractual equity position, or

disclosed his current share count or ownership-equivalent position. When directly confronted in May 2026, Xing offered an account of Plaintiff's equity — held by an undisclosed nominee and buried within an unregistered shareholding platform — that Defendants have since directly contradicted in writing, committing on July 1–8, 2026 to formally register that same interest and calculate its value.

In addition, of the $223,720 in bonus compensation that Xing confirmed in writing was owed, Defendants paid only the unconditional 50% installment ($111,860) — and only after this action was prepared for filing — while continuing to withhold the remaining $111,860 based on a future-performance condition Defendants introduced only after the relevant performance periods had already concluded — conduct that Plaintiff alleges separately violates the Massachusetts Wage Act. The status of Plaintiff's equity has assumed increased practical significance as Shanghai Xihua pursues a potential public listing and related corporate restructuring.

## PARTIES

1. Plaintiff Jiuzhou Wang is an individual and United States citizen domiciled in Lexington, Massachusetts. Plaintiff has been continuously employed by Defendant TCM Groups Inc. since April 2022 and currently holds the title of Vice President.

2. Defendant TCM Groups Inc. ("TCM") is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 495 Plainfield Ave., Berkeley Heights, New Jersey 07922. TCM is a majority-owned subsidiary of Defendant Shanghai Xihua Scientific Co., Ltd., which holds a 60% ownership interest in and exercises majority control over TCM. TCM was Plaintiff's direct employer and a signatory party to the March 2022 Offer Letter at issue in this action.

3. Defendant Jinsong Xing is a lawful permanent resident of the United States, domiciled at 15 Firestone Ct, Skillman, New Jersey. At all times relevant to this Complaint, Xing has served as the founder, legal representative (法定代表人), Chairman of the Board (董事长), General Manager (总经理), and controlling/majority shareholder of Shanghai Xihua Scientific Co., Ltd. In these capacities, Xing has been the sole and exclusive decision-maker with respect to Plaintiff's recruitment, compensation, bonus, and equity-related matters, including direct personal involvement in recruitment discussions, compensation and bonus discussions, equity-related discussions, and representations regarding alleged nominee ownership and alleged employee stock ownership vehicles.

4. Defendant Shanghai Xihua Scientific Co., Ltd. ("Shanghai Xihua") is a corporation organized under the laws of the People's Republic of China, with its principal place of business in Shanghai, China. Shanghai Xihua is the controlling parent company of both TCM and Xihua Clinical Services Co., Ltd., and was a signatory obligor under Section 4 of the March 2022 Offer Letter, pursuant to which Shanghai Xihua agreed to grant Plaintiff the equity interests described herein.

5. Non-party Xihua Clinical Services Co., Ltd. ("Xihua Clinical") is a subsidiary of Shanghai Xihua and is the entity in which Plaintiff was promised a stock option equivalent to 1.5% ownership under Component A of the Offer Letter. Xihua Clinical is not named as a defendant in this action.

## JURISDICTION AND VENUE

**A. Subject Matter Jurisdiction**

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and Defendants, including diversity between Plaintiff, a citizen of Massachusetts, and TCM, a citizen of New Jersey, and alienage jurisdiction as to Shanghai Xihua and Xing, a PRC citizen and lawful permanent resident domiciled in New Jersey; and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Plaintiff Jiuzhou Wang is a United States citizen domiciled in Lexington, Massachusetts, and is therefore a citizen of the Commonwealth of Massachusetts for diversity purposes.

8. Defendant TCM Groups Inc. is a corporation organized under the laws of New Jersey, with its principal place of business in Berkeley Heights, New Jersey, and is therefore a citizen of New Jersey.

9. Defendant Jinsong Xing is a citizen of the People's Republic of China and a lawful permanent resident of the United States domiciled in Skillman, New Jersey. Because Plaintiff is a citizen of Massachusetts, the limitation in 28 U.S.C. § 1332(a)(2) concerning lawful permanent residents domiciled in the same State as a United States citizen plaintiff does not apply.

10. This citizenship and residency status is independently corroborated by Shanghai Xihua's own 2022–2023 ChiNext IPO application, filed with the Shenzhen Stock Exchange, which formally disclosed to securities regulators that Xing holds PRC nationality and United States permanent residency (中国国籍，拥有美国永久居留权).

11. Defendant Shanghai Xihua Scientific Co., Ltd. is a corporation organized under the laws of the People's Republic of China, with its principal place of business in Shanghai, China, and is therefore a citizen of a foreign state.

12. The amount in controversy exceeds $75,000, as Plaintiff seeks, among other relief, damages for unimplemented equity compensation with a contractual minimum value of $3,000,000, the remaining disputed bonus compensation of $111,860, and related relief.

**B. Personal Jurisdiction**

13. This Court has personal jurisdiction over Defendant TCM Groups Inc. because TCM knowingly and continuously employed Plaintiff, a Massachusetts resident, in Massachusetts throughout the relevant period, and because TCM's Offer Letter to Plaintiff — the contract at the center of this action — was directed to, negotiated with, and accepted by Plaintiff in Massachusetts. In 2025 and 2026, TCM additionally arranged housing and leased office space for Plaintiff in Massachusetts, further reflecting TCM's knowing and continuous employment relationship with Plaintiff in this Commonwealth.

14. This Court has personal jurisdiction over Defendant Jinsong Xing, individually, pursuant to the Massachusetts long-arm statute, M.G.L. c. 223A, § 3(a) and (b), and consistent with the Due Process Clause of the Fourteenth Amendment, because Xing purposefully directed conduct at Massachusetts that gives rise to the claims asserted in this action, including:

a. In early 2022, Xing personally traveled to Plaintiff's Massachusetts residence to recruit Plaintiff, where he made the compensation and equity representations described below at ¶¶ 19–20, which directly induced the contract at issue;

b. In or around the second half of 2024, Xing personally traveled a second time to Plaintiff's Massachusetts residence specifically to discuss Plaintiff's request to cash out vested equity under that same contract, as described below at ¶¶ 28–29; and

c. Xing has, throughout the relevant period, directed numerous written and telephonic communications concerning Plaintiff's compensation and equity to Plaintiff in Massachusetts, knowing Plaintiff resided and worked there.

15. Xing undertook each of the acts described in ¶ 14 within the scope of his authority as the founder, legal representative (法定代表人), Chairman of the Board, and General Manager of Shanghai Xihua — the entity on whose behalf he co-signed the Offer Letter and made the equity commitments at issue. As Shanghai Xihua's legal representative and General Manager, Xing possessed and exercised actual, ongoing authority to bind Shanghai Xihua and to make the recruitment, compensation, and equity representations described throughout this Complaint; his conduct toward Plaintiff in Massachusetts was accordingly conduct of Shanghai Xihua itself, not the independent acts of a private individual.

16. This Court has personal jurisdiction over Defendant Shanghai Xihua Scientific Co., Ltd. because Shanghai Xihua, acting through Xing in his capacity as founder, legal representative, Chairman, and General Manager, purposefully directed its recruitment of Plaintiff and its negotiation and performance of the equity obligations under the Offer Letter into Massachusetts, including through the two in-person visits described at ¶ 14(a)–(b), and because Shanghai Xihua is a signatory obligor under Section 4 of the Offer Letter, which was negotiated with and accepted by a Massachusetts resident.

17. Shanghai Xihua's own 2022–2023 ChiNext IPO application, filed with the Shenzhen Stock Exchange, publicly represented to securities regulators that Xing served as the Company's legal representative, controlling shareholder, and actual controller (实际控制人), and that this status had not changed at any point during the reporting period covering 2020 through mid-2023 — a period that includes Xing's 2022 recruitment of Plaintiff described above. This public, regulator-facing disclosure is consistent with, and independently corroborates, Plaintiff's allegation that Xing possessed and exercised actual authority to act on Shanghai Xihua's behalf throughout his dealings with Plaintiff.

**C. Venue**

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's recruitment, the negotiation and

acceptance of the Offer Letter, Plaintiff's continuous employment and performance, and the two in-person visits by Xing described below, all of which took place at Plaintiff's residence in Lexington, Massachusetts.

# FACTUAL BACKGROUND

**A. Plaintiff's Recruitment and the Parties' Written Agreement**

19. In early 2022, prior to Plaintiff's acceptance of employment, Defendant Jinsong Xing ("Xing"), acting in his capacity as Chairman of the Board of Shanghai Xihua Scientific Co., Ltd. ("Shanghai Xihua"), personally traveled to Plaintiff's residence in Massachusetts to recruit Plaintiff to leave his prior employment and join TCM Groups Inc. ("TCM").

20. During that visit, in the presence of Plaintiff's spouse and other family members, Xing represented that Plaintiff would receive equity compensation valued at approximately $5,000,000 over a five-year period, that the Company was on the verge of a public offering, and that Plaintiff was being recruited with the expectation that he would eventually succeed then-CEO Maiwei Chen and later serve as CEO of Xihua Clinical Services Co., Ltd. ("Xihua Clinical").

21. On March 14, 2022, TCM issued Plaintiff a written Offer Letter, co-signed by Xing in his capacity as Chairman of the Board of Shanghai Xihua and by Maiwei Chen as President & CEO of TCM (the "Offer Letter"). Plaintiff accepted the Offer Letter on March 14, 2022, and commenced employment on April 25, 2022.

22. Section 4 of the Offer Letter obligated Shanghai Xihua to grant Plaintiff: (a) a stock option equivalent to 1.5% ownership of Xihua Clinical, at an exercise price of RMB 1.00 per share ("Component A"); and (b) a stock option for 100,000 shares of Shanghai Xihua, at an exercise price of RMB 10.00 per share, against a stated then-current market price of RMB 90.2 per share ("Component B").

23. The Offer Letter further provided that the granted options would vest 40% on Plaintiff's second anniversary of employment (April 2024) and the remaining 60% on his fifth anniversary (anticipated April 2027), and that Shanghai Xihua would guarantee a minimum aggregate value of $3,000,000 for the total stock position upon full vesting, with additional shares to be issued if necessary to satisfy that minimum.

24. These equity terms constituted a material component of the compensation package Defendants agreed to provide Plaintiff in exchange for his services under the Offer Letter.

**B. Plaintiff's Continued Performance and Defendants' Complete Failure to Implement the Promised Equity**

25. Plaintiff has continuously served as Vice President of TCM since April 2022, generating $1,339,400 in business contracts for the Company — including $1,209,400 across three agreements with AbbVie Inc. and a $130,000 Statement of Work with Liquidia Technologies Inc., derived substantially from professional relationships and client contacts Plaintiff had developed prior to joining TCM — and satisfying the first (40%) vesting milestone in April 2024.

26. Notwithstanding Plaintiff's satisfaction of the April 2024 vesting milestone and more than four years of continuous employment, Defendants have never provided Plaintiff with a grant agreement, option agreement, option certificate, equity award notice, exercise notice, board approval documentation, shareholder approval documentation, cap table entry, shareholder registration, or any other documentation evidencing that the equity promised under Section 4 of the Offer Letter has in fact been granted.

27. Defendants have never established an exercise process for either Component A or Component B, and have never disclosed to Plaintiff any dilution calculation, current share count, or ownership percentage corresponding to his equity position.

28. In or around the second half of 2024, following Plaintiff's satisfaction of the first vesting milestone, Plaintiff presented Xing with a written proposal to cash out his vested equity for $1,200,000. Xing thereafter personally traveled a second time to Plaintiff's Massachusetts residence to discuss the proposal in person, at a meeting attended by Plaintiff, Plaintiff's spouse, Xing, and a Company representative.

29. During the same discussion, Xing raised the figure of approximately $12,000,000 while discussing the anticipated future value of Plaintiff's equity and asked Plaintiff and his spouse whether that amount would be sufficient. Xing did not state that $12,000,000 was then payable to Plaintiff.

30. In or around February 2026, Plaintiff learned through internal Company communications, including messages in which certain employees expressed gratitude to the Company, that those employees had participated in

a Company-facilitated equity liquidity event through a formal employee shareholding platform (苏州溪威/Suzhou Xiwei) maintained by Defendants since at least 2021 to implement and record employee equity interests in Xihua Clinical with the Chinese corporate registry. Publicly available registry records reflect that individuals holding interests through that platform include Xing's nephew (approximately 4.5%) and other Company personnel. Plaintiff received no notice, eligibility determination, participation opportunity, or explanation regarding his exclusion from that platform or the February 2026 liquidity event.

**C. The May 16–17, 2026 Meeting and Defendants' Shifting, Internally Inconsistent Account of Plaintiff's Equity**

31. On May 16, 2026, Plaintiff's spouse, Meimei Xu, traveled from Massachusetts to Xing's residence in Skillman, New Jersey, to raise directly with Xing the status of Plaintiff's unpaid bonus and unimplemented equity.

32. On the morning of May 17, 2026, in response to Ms. Xu's inquiry regarding Plaintiff's equity, Xing — for the first time in the more than four years since the Offer Letter was executed — opened the Chinese corporate registry platform Qichacha (企查查) on his phone and represented that Component A (the 1.5% Xihua Clinical interest) was being held on Plaintiff's behalf by Xing's nephew under an undisclosed nominee arrangement (代持), and that Component B (the 100,000-share option) existed within an unregistered employee shareholding platform.

33. Xing further represented that, as a result of intervening corporate events, Plaintiff's original 100,000-share position in Component B had grown to approximately 600,000 shares as of May 2026.

34. Plaintiff has never met Xing's nephew, has never signed any nominee or trust agreement, has never received any written notice of a nominee arrangement, and has never been included in any ESOP or shareholding platform documentation. Prior to May 17, 2026, no nominee arrangement had ever been disclosed to Plaintiff or his spouse.

35. After learning of the alleged nominee arrangement, Plaintiff attempted from his Massachusetts residence to access Qichacha and independently verify the information Xing had displayed. Plaintiff was unable to access the platform through his ordinary U.S.-based internet connection. Plaintiff understood from the May 17, 2026 demonstration that Xing had accessed the platform through a China-based virtual private network or comparable network configuration, and that access to additional corporate information required a paid subscription. In any event,

publicly accessible corporate-registry information would not disclose the existence, terms, or validity of an undisclosed nominee arrangement, identify Plaintiff as the beneficial owner of interests registered in another person's name, or reveal Defendants' internal ESOP, capitalization, board-approval, or equity-allocation records.

36. During the same conversation, Xing stated that the $3,000,000 minimum value guarantee in the Offer Letter was an arrangement he had personally made specifically for Plaintiff, that no other employee had received the same term, and that Plaintiff should consider $3,000,000 more than sufficient ("这个是我专门给你们的，别人都没有"; "300万也算小富即安了").

**D. Defendants' Subsequent Written Admissions Directly Contradict the May 2026 Nominee/ESOP Account**

37. On July 1, 2026, Plaintiff spoke with Xing by telephone, and on July 2, 2026, Plaintiff sent Xing a written email memorializing that discussion. In that email, Plaintiff recorded that Xing had indicated the Company was "prepared to proceed with formally registering [Plaintiff's] equity interest," and that Xing would provide, within seven days, a written breakdown of Plaintiff's current equity position and the methodology used to calculate it following all financing, recapitalization, and dilution events since March 2022. Xing did not dispute this account of the call.

38. On July 8, 2026, Xing sent Plaintiff a written email in which he confirmed the Company would: (a) pay 50% of the target bonus for FY2024 and FY2025 without condition; (b) pay the remaining 50% contingent on Plaintiff securing signed agreements from two new client contracts; and (c) separately "provide number of Xihua shares and percentage of Xihua Clinical Services" attributable to Plaintiff's position.

39. As of the date of this Complaint, Defendants have not provided the promised written breakdown of Plaintiff's equity position, have not registered Plaintiff's equity interest, and have not otherwise provided Plaintiff with any grant agreement, cap table entry, or other documentation evidencing that the equity promised under the March 2022 Offer Letter has ever been formally implemented. As set forth below at ¶ 51, Defendants paid the unconditional 50% bonus installment on July 21, 2026, but have not paid the remaining 50% portion.

**E. Defendants' Admissions Regarding Plaintiff's Unpaid Bonus Compensation**

40. In each of FY2022 and FY2023, Defendants paid Plaintiff's annual bonus at the full 30% target amount, without dispute or delay.

41. Section 2.4 of the Offer Letter provided that Plaintiff's "target bonus is up to 30% of [his] Total Annual Base Package," with the actual payout amount "determined by TCM and its parent company... based on TCM's overall performance and [Plaintiff's] personal performance."

42. On November 10, 2025, Plaintiff sent Xing a written email requesting payment of Plaintiff's outstanding FY2024 bonus. Defendants did not respond.

43. On January 2, 2026, Plaintiff sent Xing a further written email requesting payment of both the outstanding FY2024 and FY2025 bonus amounts. Defendants again did not respond.

44. On the afternoon of May 16, 2026 — during the same visit to Xing's New Jersey residence described above at ¶ 31 — Plaintiff's spouse raised the unpaid bonus directly with Xing, in the presence of Xing's wife. Xing verbally acknowledged that the FY2024 and FY2025 bonuses remained unpaid and committed to paying the full amount by the end of June 2026. When Plaintiff's spouse reminded Xing that he had previously indicated interest would be included on the delayed payments, Xing declined to honor that prior representation and refused to include interest.

45. On June 1, 2026, Plaintiff sent Xing a written email confirming a total outstanding bonus amount of $219,132. In response, Xing raised questions regarding two salary increases Plaintiff had received in FY2024 and FY2025, but at no point disputed, denied, or corrected the stated bonus figure, and did not assert that the bonus amount remained undetermined.

46. The June 30, 2026 deadline Xing had committed to on May 16, 2026 passed without any payment being made.

47. On July 1, 2026, Plaintiff spoke with Xing by telephone. During that call, Xing proposed paying 50% of the outstanding bonus immediately, with the remaining 50% contingent on Plaintiff securing signed agreements from two new client contracts. Plaintiff rejected this proposal on the ground that compensation already earned for past performance could not lawfully be conditioned on future performance. Xing stated that he needed to consult with the Company's board before proceeding.

48. On July 2, 2026, Plaintiff sent Xing a written email memorializing the July 1 call, in which Plaintiff again confirmed the total outstanding bonus amount of $223,720 and asked for the Board's expected timeline for approval.

In the same email, Plaintiff separately addressed the status of his equity compensation, as set forth above at ¶ 37. Xing did not respond to dispute or correct the $223,720 figure.

49. On July 8, 2026, Xing sent Plaintiff a written email confirming that the Company would (a) pay 50% of the target bonus for FY2024 and FY2025 without condition, and (b) pay the remaining 50% contingent on Plaintiff signing two new client contracts. Xing did not, at any point in this email or in any prior communication spanning more than eight months of Plaintiff's repeated requests, dispute the existence of the bonus obligation or the amount claimed.

50. As of the date of the July 8, 2026 email described above, Defendants had not paid any portion of the bonus compensation for FY2024 and FY2025.

51. On July 21, 2026 — after this action was prepared for filing and after counsel for Plaintiff had issued a written demand letter dated July 14, 2026 — Defendants paid Plaintiff $111,860, representing the unconditional 50% installment of the FY2024–FY2025 bonus that Xing confirmed in writing on July 8, 2026 to be owed without condition, as set forth above at ¶ 49. This payment was made without any accompanying release, waiver, or other condition. As of the date of this Complaint, Defendants have not paid the remaining $111,860 portion of the bonus, which Xing's July 8, 2026 email conditioned on Plaintiff securing signed agreements from two new client contracts.

**F. The Pending Hong Kong Stock Exchange IPO**

52. On the morning of May 17, 2026 — during the same conversation described above at ¶¶ 31–33, in which Xing first disclosed the alleged nominee and unregistered shareholding-platform arrangements affecting Plaintiff's equity — Xing received and read aloud to Plaintiff's spouse an email confirming that the Board of Shanghai Xihua had approved pursuit of an initial public offering on the Hong Kong Stock Exchange (H-share listing).

53. Xing stated that the IPO's sponsor would be Huatai Securities (华泰证券) and that its auditor would be Ernst & Young (安永). At that time, Xing represented that the earliest anticipated timeline called for an A1 submission in July 2026 and formal filing in early August 2026; upon information and belief, that timeline has since shifted, and as of the date of this Complaint the anticipated A1 submission is expected on or about early September 2026.

54. During the same conversation, Xing represented that the sponsor's valuation of the group was approximately RMB 10–11 billion, that Xing personally believed the valuation should be RMB 11–12 billion based on two pending technology patents, and that Plaintiff's 1.5% interest in Xihua Clinical was, in Xing's own words, "extremely valuable" (非常值钱).

55. An initial public offering on a regulated exchange ordinarily subjects the issuer's capitalization, shareholding structure, and material equity arrangements to sponsor and auditor due diligence and applicable disclosure requirements.

56. As of the date of this Complaint, Defendants have not resolved, registered, or documented Plaintiff's equity interests under Section 4 of the Offer Letter, notwithstanding Defendants' concurrent pursuit of a public listing in which the Company's capitalization, shareholding structure, and material equity arrangements may be subject to sponsor and auditor due diligence and applicable disclosure requirements.

**G. Formal Written Notice and Defendants' Continued Nonperformance**

57. On July 14, 2026, through counsel, Plaintiff provided Defendants with formal written notice concerning his unpaid bonus compensation and unimplemented equity obligations and requested, among other things, documentation sufficient to establish the existence, quantity, status, and value of the equity promised under Section 4 of the Offer Letter.

58. The requested equity documentation included capitalization and dilution information, records concerning Plaintiff's share or option position, employee-equity or shareholding-platform documentation, relevant corporate approvals, and documentation concerning the alleged nominee arrangement previously described by Xing, as set forth above at ¶ 32. Defendants did not provide those materials or otherwise substantively resolve Plaintiff's equity position.

59. Following the July 14 written demand, TCM paid Plaintiff the unconditional $111,860 bonus installment on July 21, 2026, as set forth above at ¶ 51. Defendants nevertheless continued to withhold the remaining $111,860 and did not provide the requested documentation concerning Plaintiff's equity.

60. On July 31, 2026, Plaintiff's counsel sent Defendants a further written demand reiterating that the bonus and equity disputes remained unresolved and requesting the previously sought records and information. As of the date of this Complaint, Defendants have not provided the requested equity documentation, formally registered Plaintiff's interest, or otherwise resolved the status of the compensation promised under Section 4.

## COUNT I — BREACH OF CONTRACT (EQUITY COMPENSATION)

*(Against Defendant Shanghai Xihua Scientific Co., Ltd. directly, and against Defendant TCM Groups Inc. to the extent established by the Offer Letter and applicable law)*

61. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

62. The March 2022 Offer Letter constitutes a valid, binding, and enforceable written contract between Plaintiff, on the one hand, and Defendants TCM and Shanghai Xihua, on the other. Shanghai Xihua is a direct party and obligor to the equity provisions of the Offer Letter, having co-signed the document through Xing in his capacity as Chairman of the Board of Shanghai Xihua, and having assumed the express contractual obligation, set forth in Section 4, to grant Plaintiff the equity interests described therein. TCM is also a signatory to the Offer Letter, having co-signed the document through Maiwei Chen as its President & CEO; Plaintiff alleges TCM's liability under this Count to the extent established by the Offer Letter, taken as a single integrated agreement, and applicable law governing co-contracting parties.

63. Plaintiff fully performed all conditions required of him under the Offer Letter. Plaintiff commenced and has continuously maintained employment with TCM since April 2022, has satisfied the first (40%) vesting milestone as of April 2024, and has at all times remained ready, willing, and able to satisfy any remaining conditions to full vesting.

64. Section 4 of the Offer Letter obligated Shanghai Xihua to grant Plaintiff: (a) a stock option equivalent to 1.5% ownership of Xihua Clinical Services Co., Ltd.; (b) a stock option for 100,000 shares of Shanghai Xihua Scientific Co., Ltd.; (c) vesting of 40% of the granted options after two years and the remaining 60% after five years; and (d) a guaranteed minimum aggregate value of $3,000,000 for the total stock position upon full vesting, with additional shares to be issued if necessary to satisfy that minimum.

65. Defendants have breached Section 4 of the Offer Letter in multiple, independent respects:

a. Failure to grant. More than four years after the Offer Letter was executed, and more than two years after Plaintiff satisfied the first vesting milestone in April 2024, Defendants have never issued Plaintiff a grant agreement, option agreement, option certificate, or any other instrument formally granting the equity interests promised under Section 4, as set forth above at ¶¶ 26–27.

b. Failure to register or document the promised equity interest. Defendants have never provided Plaintiff with a cap table entry, shareholder registration, ESOP documentation, or any comparable record reflecting Plaintiff's contractual equity position, notwithstanding Xing's written commitment on July 1–2, 2026 to proceed with formal registration, as set forth above at ¶ 37.

c. Failure to disclose the current equity position. Defendants have never disclosed to Plaintiff the current share count, ownership percentage, or dilution calculation attributable to his position, notwithstanding Xing's written commitment on July 8, 2026 to provide "number of Xihua shares and percentage of Xihua Clinical Services" attributable to Plaintiff's interest, as set forth above at ¶ 38. No such information has been provided as of the date of this Complaint.

d. Repudiation of the bargained-for equity interest through the undisclosed nominee arrangement. On May 17, 2026, Xing represented for the first time that Plaintiff's 1.5% interest in Xihua Clinical was not held in Plaintiff's own name, but rather by an undisclosed third party — Xing's nephew — under a nominee arrangement to which Plaintiff never agreed and of which Plaintiff was never informed, as set forth above at ¶ 32. An undisclosed nominee arrangement of this kind does not satisfy Defendants' contractual obligation to grant Plaintiff a 1.5% equity interest; it substitutes an unenforceable and unverifiable beneficial claim against a private individual for the option interest the Offer Letter promised.

66. Defendants' subsequent written commitments to formally register Plaintiff's equity and to affirmatively calculate and disclose his specific share count and ownership percentage, described above at ¶¶ 37–38, are materially difficult to reconcile with the nominee and unregistered-ESOP account Xing gave on May 17, 2026. An interest already held by an undisclosed third-party nominee, or existing only within an informal, unregistered vehicle, raises a substantial question as to whether the equity interests had previously been formally implemented as

represented. This inconsistency is itself evidence that Defendants' representations regarding the status of Plaintiff's equity have been unreliable, and that Defendants have not in fact performed — and, as of May 2026, do not appear to have ever performed — their Section 4 obligations to Plaintiff.

67. Defendants' minimum-value guarantee of $3,000,000 upon full vesting is a continuing contractual protection applicable upon full vesting in April 2027. Defendants' failure to identify, document, or disclose the current value, share count, or ownership structure of Plaintiff's equity position creates a present controversy concerning the equity position to which that guarantee will apply upon maturity, and Plaintiff is unable to verify Defendants' eventual compliance.

68. As a direct and proximate result of Defendants' breaches of Section 4 of the Offer Letter, Plaintiff has suffered monetary damages representing the economic value of the equity compensation Defendants were contractually obligated to grant and implement under Components A and B of Section 4, including Plaintiff's vested contractual interests, together with such additional damages as may be recoverable for Defendants' continuing breach or repudiation of their remaining contractual obligations.

69. The precise amount of Plaintiff's monetary damages presently cannot be calculated because the information necessary to value the promised interests — including capitalization records, financing and recapitalization history, dilution calculations, share adjustments, employee-equity records, and records concerning the alleged nominee arrangement described above at ¶ 32 — is within Defendants' possession and control and has never been disclosed to Plaintiff, notwithstanding Defendants' failure to disclose the dilution calculations and ownership records described above at ¶¶ 26–27. That information can be obtained through discovery and used to determine the monetary value of the compensation Defendants failed to provide, consistent with Xing's own written commitment on July 1–2, 2026 to proceed with formal registration of Plaintiff's equity interests, as set forth above at ¶ 37.

WHEREFORE, Plaintiff demands judgment against Defendant Shanghai Xihua Scientific Co., Ltd. directly, and against Defendant TCM Groups Inc. to the extent established by the Offer Letter and applicable law, for: (a) compensatory damages in an amount to be determined at trial; (b) pre- and post-judgment interest; (c) costs of this action; and (d) such other and further relief as this Court deems just and proper.

# COUNT II — BREACH OF CONTRACT (BONUS COMPENSATION)

*(Against Defendant TCM Groups Inc.)*

70. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

71. Section 2.4 of the Offer Letter constitutes a valid, binding, and enforceable contractual provision obligating TCM to pay Plaintiff a target bonus of up to 30% of his Total Annual Base Package, with the actual amount to be determined based on TCM's overall performance and Plaintiff's personal performance, as set forth above at ¶ 41.

72. Plaintiff fully performed the services to which the FY2024 and FY2025 bonus determinations related and remained eligible for bonus consideration under Section 2.4 of the Offer Letter. Defendants never asserted that Plaintiff failed to satisfy any performance requirement applicable to FY2024 or FY2025. Instead, after Plaintiff repeatedly requested payment, Defendants acknowledged the existence of the outstanding bonus obligation and proceeded to determine how much of that bonus would be paid and on what terms.

73. On May 16, 2026, Xing, acting on behalf of TCM, acknowledged that Plaintiff's FY2024 and FY2025 bonuses remained unpaid and committed to paying the outstanding bonus by June 30, 2026, as set forth above at ¶ 44. No contention was made that Plaintiff had failed to satisfy the applicable FY2024 or FY2025 performance standards. When no payment was made by the promised deadline, as set forth above at ¶ 46, Xing subsequently proposed, for the first time on July 1, 2026, that only one-half of the bonus would be paid immediately and that payment of the remaining half would depend upon Plaintiff's future procurement of two new client contracts, as set forth above at ¶ 47. On July 8, 2026, Xing confirmed that arrangement in writing, as set forth above at ¶ 49.

74. Defendants had previously paid Plaintiff's bonus at the full target amount in each of FY2022 and FY2023, as set forth above at ¶ 40, without conditioning payment on any future business generation. TCM breached Section 2.4 of the Offer Letter by attempting, for the first time after Plaintiff had completed the relevant FY2024 and FY2025 performance periods, to condition payment of one-half of Plaintiff's bonus on his future procurement of two additional client contracts, as set forth above at ¶ 47. On its face, future business generation does not appear among the contractual criteria — TCM's overall performance and Plaintiff's personal performance during the relevant bonus

years — governing the determination of the FY2024 or FY2025 bonus under Section 2.4, supporting the inference that this condition fell outside the framework that provision established.

75. Alternatively, if Section 2.4 is construed as affording TCM broad discretion in determining Plaintiff's bonus entitlement, Plaintiff alleges that TCM had already exercised that discretion no later than May 16, 2026, when Xing acknowledged the outstanding bonus and committed to paying it in full by June 30, 2026, as set forth above at ¶ 44. TCM therefore could not thereafter reopen that determination by imposing a new condition, first introduced on July 1, 2026, unrelated to Plaintiff's FY2024 or FY2025 performance, as set forth above at ¶ 47.

76. On July 21, 2026, TCM paid Plaintiff $111,860, representing the portion of the bonus that Xing had identified in writing on July 8, 2026 as payable without condition, as set forth above at ¶ 49. That subsequent payment confirms that Defendants had already determined at least that portion of Plaintiff's FY2024–FY2025 bonus to be presently owing. It did not eliminate the remaining contractual dispute concerning the unpaid balance, nor did Defendant's delay in making that payment beyond the June 30, 2026 deadline it had itself set relieve Defendant of liability for damages arising from that delay.

77. As a direct and proximate result of Defendant's breach, Plaintiff continues to be deprived of the remaining unpaid FY2024–FY2025 bonus, in an amount up to $111,860, together with pre- and post-judgment interest as permitted by law. Plaintiff further seeks interest arising from Defendant's delay in paying the $111,860 portion of the bonus that Defendant ultimately conceded, no later than July 8, 2026, was payable without condition, which was not paid until July 21, 2026.

WHEREFORE, Plaintiff demands judgment against Defendant TCM Groups Inc. for: (a) compensatory damages of up to $111,860; (b) pre- and post-judgment interest, including interest on the $111,860 unconditional portion for the period between the June 30, 2026 deadline and its payment on July 21, 2026; (c) costs of this action; and (d) such other and further relief as this Court deems just and proper.

## COUNT III — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

*(Against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd.)*

78. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

79. Every contract governed by Massachusetts law contains an implied covenant of good faith and fair dealing, which requires each contracting party to exercise any contractual discretion honestly and in good faith, and prohibits either party from using contractual discretion or exploiting contractual silence in a manner that destroys or unfairly deprives the other party of the fruits of the parties' bargain.

80. The Offer Letter afforded Defendants discretion in certain respects, including the determination of Plaintiff's annual bonus under Section 2.4, and did not prescribe every administrative step or deadline governing implementation of the equity compensation promised under Section 4. Plaintiff does not allege that these contractual features themselves were improper. Rather, Plaintiff alleges that Defendants exercised their contractual discretion, and exploited the contractual silence regarding implementation, for purposes inconsistent with the reasonable expectations created by the Offer Letter.

81. To the extent Section 2.4 of the Offer Letter afforded Defendants discretion in determining the amount of Plaintiff's bonus, Defendants did not exercise that discretion as a genuine evaluation of Plaintiff's FY2024 and FY2025 performance. Defendants had previously paid Plaintiff's bonus at the full target amount in each of FY2022 and FY2023, as set forth above at ¶ 40, without any such condition. On May 16, 2026, Xing committed unconditionally to paying the full bonus amount by the end of June 2026, as set forth above at ¶ 44. That deadline passed without payment, as set forth above at ¶ 46. Only then, on July 1, 2026 — after Defendants had repeatedly declined to dispute the specific bonus figures Plaintiff identified over the preceding eight months, as set forth above at ¶¶ 45, 48 — did Defendants first introduce a future-performance condition, using their contractual discretion as leverage to compel Plaintiff's generation of new client business rather than as a genuine evaluation of performance already rendered, as set forth above at ¶ 47.

82. Defendants' subsequent conduct further confirms that their discretion has not been exercised as a genuine, unified evaluation of Plaintiff's FY2024 and FY2025 performance. On July 21, 2026, Defendants ultimately paid the $111,860 portion of the bonus they had already conceded was owed without condition, as set forth above at ¶¶ 49, 51. Defendants have not paid the remaining $111,860, which remains conditioned on Plaintiff's future generation of new client business — a requirement unrelated to the FY2024 and FY2025 performance for which the bonus as a whole was payable. This selective payment demonstrates that Defendants have continued to use their discretion over

the remaining portion as leverage to compel Plaintiff's future performance, rather than as a mechanism for evaluating performance he has already rendered.

83. Independently, Defendants exploited the Offer Letter's silence regarding the mechanics and timing of equity implementation to keep Plaintiff performing services after his April 2024 vesting milestone while withholding the information and corporate action necessary for Plaintiff to identify, exercise, or protect his vested rights, as set forth above at ¶¶ 26–27. This conduct deprived Plaintiff of the benefit he reasonably expected under Section 4 independent of whether Defendants ultimately grant the equity described therein.

84. Viewed together, Defendants' conduct reflects a consistent pattern in which every contractual flexibility operated only in Defendants' favor. Where the Offer Letter afforded discretion, Defendants exercised that discretion to postpone payment or impose new conditions. Where the Offer Letter was silent, Defendants used that silence to avoid implementing Plaintiff's equity. At no point did Defendants exercise either contractual discretion or contractual silence in a manner intended to carry out the compensation structure the parties had agreed upon.

85. As a direct and proximate result of Defendants' bad-faith exercise of contractual discretion and exploitation of the Offer Letter's implementation gaps, Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd., jointly and severally, for: (a) compensatory damages in an amount to be determined at trial; (b) costs of this action; and (c) such other and further relief as this Court deems just and proper.

## COUNT IV — VIOLATION OF THE MASSACHUSETTS WAGE ACT, M.G.L. C. 149, § 148

*(Against Defendants TCM Groups Inc. and Jinsong Xing)*

86. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

87. The Massachusetts Wage Act, M.G.L. c. 149, § 148, requires employers to pay employees all wages earned, including bonuses that have been earned and definitely determined, within the time periods specified by statute.

88. Plaintiff timely filed a complaint concerning these wage violations with the Massachusetts Attorney General's Office and received authorization to pursue this private civil action, in satisfaction of the statutory prerequisite set forth in M.G.L. c. 149, § 150.

89. Defendant Jinsong Xing is a person "having the management of" TCM within the meaning of M.G.L. c. 149, § 148, and is therefore subject to individual liability under the Wage Act. At all relevant times, Xing personally directed, negotiated, and made all decisions concerning Plaintiff's bonus compensation, including the verbal commitment described above at ¶ 44 and the subsequent bonus decisions and written communications described above at ¶¶ 47, 49.

90. Defendants' own conduct establishes that, at minimum, the following portions of Plaintiff's FY2024 and FY2025 bonus were definitely determined and due, such that they constitute earned wages under the Wage Act rather than a discretionary, undetermined payment:

a. the fifty percent (50%) portion of the bonus that Xing confirmed in writing on July 8, 2026 was payable "without condition," as set forth above at ¶ 49 — an unconditional written commitment confirming that a defined fifty-percent portion of Plaintiff's FY2024 and FY2025 target bonus was payable without further performance condition, and which Defendants ultimately paid on July 21, 2026, as set forth above at ¶ 51; and

b. in the alternative, the remaining fifty percent (50%) portion, which Defendants purported to condition in 2026 on Plaintiff's future procurement of two new client contracts, as set forth above at ¶¶ 47, 49, notwithstanding that the underlying bonus compensation related to services Plaintiff had already rendered in FY2024 and FY2025 — a retroactive conditioning of already-accrued compensation that Plaintiff alleges cannot lawfully defeat his entitlement to that portion as earned wages, and which remains unpaid to date.

91. Further corroborating that these amounts were fixed rather than discretionary, over more than eight months of repeated written and verbal communications between November 2025 and July 2026, Defendants never once disputed, denied, or corrected the specific bonus figures Plaintiff identified — first $219,132 on June 1, 2026, and then $223,720 on July 2, 2026, as set forth above at ¶¶ 45, 48 — despite numerous opportunities to do so.

92. On the afternoon of May 16, 2026, at his residence in New Jersey and in the presence of his own wife as a witness, Xing verbally acknowledged that the FY2024 and FY2025 bonuses remained unpaid and committed, unconditionally, to paying the full amount by the end of June 2026, as set forth above at ¶ 44. That deadline passed without payment, as set forth above at ¶ 46.

93. On July 1, 2026, Xing proposed for the first time to condition 50% of the already-earned bonus on Plaintiff's securing signed agreements from two new client contracts — a condition tied entirely to future performance, as set forth above at ¶ 47. On July 8, 2026, Xing confirmed this position in writing, stating that Defendants would pay 50% of the bonus "without condition" and the remaining 50% only if Plaintiff secured the two new contracts, as set forth above at ¶ 49.

94. Plaintiff alleges that Defendants could not retroactively impose a new future-performance condition on bonus compensation that had already been determined based on FY2024 and FY2025 performance, as described above at ¶ 90. Defendants' attempt to condition payment of the remaining 50% portion described in ¶ 90(b) on Plaintiff's future procurement of new client contracts is itself a violation of the Wage Act, independent of Defendants' delay in paying the unconditional 50% portion described in ¶ 90(a).

95. On July 21, 2026, Defendants paid Plaintiff the unconditional $111,860 portion of the bonus, as set forth above at ¶ 51 — twenty-one days after the June 30, 2026 deadline Defendants themselves had set. As of the date of this Complaint, Defendants have not paid the remaining $111,860 portion of the bonus owed for FY2024 and FY2025.

96. Defendants' failure to timely pay the $111,860 unconditional portion described in ¶ 90(a), if determined to constitute earned wages due under § 148, entitles Plaintiff to the remedies provided by § 150, including treble damages based on the amount of the late-paid wages, notwithstanding Defendants' subsequent payment of that amount on July 21, 2026. See Reuter v. City of Methuen, 489 Mass. 465, 468–74 (2022) (proper measure of Wage Act damages for wages paid late but before suit is treble the amount of the late wages, not trebled interest on the delay). To the extent the Court determines that Defendants unlawfully conditioned the remaining $111,860 portion described in ¶ 90(b), Plaintiff is entitled to treble damages on that portion as well, pursuant to M.G.L. c. 149, § 150, together with reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands judgment against Defendants TCM Groups Inc. and Jinsong Xing, jointly and severally, for: (a) treble damages of $335,580 pursuant to M.G.L. c. 149, § 150 based on the $111,860 late-paid unconditional portion of Plaintiff's FY2024–FY2025 bonus described in ¶ 90(a), notwithstanding Defendants' payment of that amount on July 21, 2026, and, if the remaining portion described in ¶ 90(b) is determined to be earned wages that Defendants unlawfully withheld, additional treble damages of up to $335,580 on that portion, representing three times its value; (b) reasonable attorneys' fees and costs; and (c) such other and further relief as this Court deems just and proper.

## COUNT V — DECLARATORY JUDGMENT

*(28 U.S.C. §§ 2201–2202; Against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd.)*

97. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

98. An actual and justiciable controversy exists between Plaintiff and Defendants concerning the existence, validity, and current status of Plaintiff's equity interests under Section 4 of the Offer Letter. Defendants have taken inconsistent positions regarding those interests, including representing on May 17, 2026 that the equity underlying Plaintiff's 1.5% stock option in Xihua Clinical Services Co., Ltd. is held by an undisclosed third-party nominee and that Plaintiff's interest in Shanghai Xihua Scientific Co., Ltd. exists only within an unregistered shareholding platform, as set forth above at ¶ 32, while separately committing in writing on July 1–8, 2026 to formally register that same interest and to calculate and disclose its current share count and ownership percentage, as set forth above at ¶¶ 37–38.

99. Plaintiff seeks a judicial declaration, pursuant to 28 U.S.C. § 2201, resolving this controversy and establishing the parties' respective rights and obligations.

WHEREFORE, Plaintiff demands that this Court enter a declaratory judgment: (a) declaring that Plaintiff possesses valid and enforceable contractual rights under Section 4 to the equity interests described therein, including the stock option equivalent to 1.5% ownership of Xihua Clinical Services Co., Ltd. and the stock option for 100,000 shares of Shanghai Xihua Scientific Co., Ltd., subject to any legally or contractually applicable adjustment established through discovery; (b) declaring that any nominee, trust, or unregistered shareholding-platform arrangement purporting to hold Plaintiff's equity interest on his behalf, to which Plaintiff never consented and of which Plaintiff

was not informed at the time it was purportedly created, does not satisfy Defendants' obligations under Section 4 of the Offer Letter; (c) declaring that Defendants remain contractually obligated under Section 4 of the Offer Letter with respect to the equity compensation promised therein, including the contractual minimum-value guarantee of $3,000,000 applicable upon full vesting in April 2027; and (d) granting such other and further relief as this Court deems just and proper.

## COUNT VI — UNJUST ENRICHMENT AND QUANTUM MERUIT

*(Against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd., Pled in the Alternative to Counts I–III)*

100. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

101. This Count is pled in the alternative to Counts I, II, and III, and only to the extent the Court determines that a valid, enforceable contract does not govern the compensation and equity interests at issue in this action.

102. Plaintiff conferred a substantial benefit on Defendants through his continuous service as Vice President of TCM since April 2022, including by generating $1,339,400 in business contracts for the Company — comprising $1,209,400 across three agreements with AbbVie Inc. and a $130,000 Statement of Work with Liquidia Technologies Inc. — as set forth above at ¶ 25, without receiving the bonus and equity compensation Defendants agreed to provide in exchange for that performance.

103. Defendants had knowledge of, and accepted and retained, the benefit of Plaintiff's services and the business he generated for the Company, including the revenue and client relationships described above at ¶ 25.

104. It would be inequitable for Defendants to retain the benefit of Plaintiff's services and the business he generated without compensating him for the reasonable value of that benefit, particularly where Defendants have withheld the bonus compensation described above at ¶¶ 40–51 and have failed to implement the equity compensation described above at ¶¶ 26–39, notwithstanding their acceptance and retention of the benefit of Plaintiff's continued service.

105. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has been damaged in an amount to be determined at trial, representing the reasonable value of the services and benefit Plaintiff conferred on Defendants for which he has not been compensated.

WHEREFORE, Plaintiff demands judgment against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd., jointly and severally, in the alternative to Counts I, II, and III, for: (a) damages in an amount to be determined at trial, representing the reasonable value of the benefit conferred on Defendants; (b) costs of this action; and (c) such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jiuzhou Wang respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A. On Count I (Breach of Contract – Equity Compensation), against Defendant Shanghai Xihua Scientific Co., Ltd. directly, and against Defendant TCM Groups Inc. to the extent established by the Offer Letter and applicable law, compensatory damages in an amount to be determined at trial, and pre- and post-judgment interest;

B. On Count II (Breach of Contract – Bonus Compensation), against Defendant TCM Groups Inc., to the extent the Court determines Defendant improperly conditioned the remaining bonus portion, compensatory damages of up to $111,860, plus pre- and post-judgment interest, including interest on the previously-unpaid $111,860 unconditional portion for the period between the June 30, 2026 deadline and its payment on July 21, 2026;

C. On Count III (Breach of the Implied Covenant of Good Faith and Fair Dealing), against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd., jointly and severally, compensatory damages in an amount to be determined at trial;

D. On Count IV (Violation of the Massachusetts Wage Act), against Defendants TCM Groups Inc. and Jinsong Xing, jointly and severally, treble damages of $335,580 pursuant to M.G.L. c. 149, § 150 based on the $111,860 late-paid unconditional portion of Plaintiff's FY2024–FY2025 bonus,

notwithstanding Defendants' payment of that amount on July 21, 2026, and, if the remaining $111,860 is determined to be earned wages that Defendants unlawfully withheld, additional treble damages of up to $335,580 on that portion, together with reasonable attorneys' fees and costs pursuant to M.G.L. c. 149, § 150;

E. On Count V (Declaratory Judgment), against Defendants TCM Groups Inc. and Shanghai Xihua Scientific Co., Ltd., a judicial declaration of Plaintiff's equity rights and Defendants' corresponding obligations as set forth in the Prayer for Relief accompanying that Count;

F. Reasonable attorneys' fees and costs of this action to the extent permitted by applicable law and contract;

G. Pre-judgment and post-judgment interest as allowed by law; and

H. In the alternative to Counts I, II, and III, and pursuant to Count VI, damages in an amount to be determined at trial representing the reasonable value of the benefit conferred on Defendants; and

I. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Jiuzhou Wang

Jiuzhou Wang

Plaintiff, Pro Se

24 Butterfield Rd

Lexington, MA 02420

(847) 877-8799

jiuzhouw@yahoo.com

*[Dated:* 02SEP*, 2026]*