UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JIUZHOU WANG,<br><br>Plaintiff,<br><br>v.<br><br>TCM GROUPS INC., SHANGHAI XIHUA SCIENTIFIC CO., LTD., and JINSONG XING,<br><br>Defendants. | CIVIL ACTION<br><br>Case No. 1:26-cv-13710-WGY |

===========================================================

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS TCM GROUPS INC. AND DR. JINSONG XING'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

===========================================================

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ........................................................................ 2

LEGAL ARGUMENT ........................................................................ 5

I. THE FIRST AMENDED COMPLAINT MUST STATE A PLAUSIBLE CLAIM, AND THE COURT MAY CONSIDER THE OFFER LETTER. ........................................................................ 5

II. COUNT I FAILS BECAUSE TCM HAS NO EQUITY OBLIGATION, NO BREACH IS ALLEGED, AND THE GUARANTEE HAS NOT MATURED. ........................................................................ 6

III. COUNT II FAILS BECAUSE THE BONUS IS DISCRETIONARY AND TCM EXERCISED THAT DISCRETION. ........................................................................ 9

IV. COUNT III FAILS BECAUSE THE IMPLIED COVENANT CANNOT CREATE RIGHTS THE OFFER LETTER DOES NOT PROVIDE. ........................................................................ 11

V. COUNT IV FAILS BECAUSE A DISCRETIONARY BONUS IS NOT A "WAGE," AND DR. XING DID NOT HAVE THE MANAGEMENT OF TCM. ........................................................................ 12

VI. COUNTS V AND VI SHOULD BE DISMISSED AS DUPLICATIVE OF PLAINTIFF'S CONTRACT CLAIMS. ............ 15

VII. IN THE ALTERNATIVE, THE EQUITY CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS. ........................................................................ 16

CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth.*, *479 Mass. 419 (2018)*......12

*Artuso v. Vertex Pharms., Inc.*, 637 F.3d 1 (1st Cir. 2011)......10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......5

*Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367 (2005)......11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......5

*Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925 (1st Cir. 2014)......16

*Bos. Police Patrolmen's Ass'n, Inc. v. City of Boston*, 435 Mass. 718 (2002)......13

*Chokel v. Genzyme Corp.*, 449 Mass. 272 (2007)......12

*D & N Corp. v. Intoccia*, 87 Mass. App. Ct. 1129 (2015)......6

*Daniels v. Newton*, 114 Mass. 530 (1874)......9

*Dutil v. Murphy*, 550 F.3d 154 (1st Cir. 2008)......5

*Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281 (2007)......11

*Estate of Moulton v. Puopolo*, 467 Mass. 478 (2014)......14

*Fernandes v. Havkin*,
731 F. Supp. 2d 103 (D. Mass. 2010) ....................16

*Ferranti v. Moran*,
618 F.2d 888 (1st Cir. 1980) ....................6

*Haines v. Kerner*,
404 U.S. 519 (1972) ....................5

*Imamura v. Gen. Elec. Co.*,
957 F.3d 98 (1st Cir. 2020) ....................17

*Iragorri v. Int'l Elevator, Inc.*,
203 F.3d 8 (1st Cir. 2000) .................... 17-18

*My Bread Baking Co. v. Cumberland Farms, Inc.*,
353 Mass. 614 (1968) ....................7

*Nunez v. Syncsort Inc.*,
496 Mass. 706 (2025) ....................13

*Okmyansky v. Herbalife Int'l of Am., Inc.*,
415 F.3d 154 (1st Cir. 2005) ....................16

*Pear v. Davenport*,
67 Mass. App. Ct. 239 (2006) ....................8

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .................... 17-19

*Segal v. Genitrix, LLC*,
478 Mass. 551 (2017) ....................14

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017) ....................16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ....................16

*Siri v. Town of Hingham*,
662 F. Supp. 3d 44 (D. Mass. 2023) ....................5

*Sullivan v. Starwood Hotels & Resorts Worldwide, Inc.*,
949 F. Supp. 2d 324 (D. Mass. 2013) ....................17

*Uno Rests., Inc. v. Boston Kenmore Realty Corp.*,
441 Mass. 376 (2004)....................11

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*,
238 F. Supp. 3d 314 (N.D.N.Y. 2017)....................15

*Vieira v. First Am. Title Ins. Co.*,
668 F. Supp. 2d 282 (D. Mass. 2009) ....................6

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993) ........................ .................... ....................5

*Weems v. Citigroup Inc.*,
453 Mass. 147 (2009)....................13

*Weiler v. PortfolioScope, Inc.*,
469 Mass. 75 (2014)....................11

*Weiss v. DHL Express, Inc.*,
718 F.3d 39 (1st Cir. 2013)....................13

*Westinghouse Broad. Co. v. New England Patriots Football Club, Inc.*,
10 Mass. App. Ct. 70 (1980)....................*8*

*Wiedmann v. Bradford Grp., Inc.*,
*444* Mass. 698 (2005)....................14

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ....................15

*Woolley v. Groft*,
653 F. Supp. 3d 171 (M.D. Pa. 2023) ....................15

*Young v. Wells Fargo Bank, N.A.*,
717 F.3d 224 (1st Cir. 2013) ....................5

**STATUTES AND RULES**

28 U.S.C. § 2201 ....................15

M.G.L. c. 149, § 148 ........................................................................ 12-14

M.G.L. c. 149, § 150 ........................................................................ 12, 13

Fed. R. Civ. P. 12(b)(6) ........................................................................ 5

**OTHER AUTHORITIES**

Restatement (Second) of Agency § 14C (1958) ........................................ 14

## PRELIMINARY STATEMENT

Defendants TCM Groups Inc. ("TCM") and Dr. Jinsong Xing submit this brief in support of their motion to dismiss. Defendant Shanghai Xihua Scientific Co., Ltd. ("Shanghai Xihua") has not been served.

Plaintiff Jiuzhou Wang is a current Vice President of TCM. He asks this Court to turn two features of his compensation into present, guaranteed debts. The first is a performance bonus that his Offer Letter expressly leaves to the determination of "TCM and its parent company," in an amount "up to" 30% of his base, "if any." The second is a set of options on stock of two Chinese companies, which TCM did not issue, which Plaintiff has never tried to exercise, and whose minimum-value guarantee does not mature until April 2027. Neither theory states a claim against TCM or Dr. Jinsong Xing.

Each count fails on the face of the pleading and the Offer Letter. The equity claim (Count I) fails as to TCM because Section 4 places the equity obligation on Shanghai Xihua. It also fails because Plaintiff alleges no exercise and no refusal, and because the guarantee has not matured. The bonus claim (Count II) fails because the bonus is discretionary and Plaintiff pleads that the discretion was exercised: TCM paid half of the target bonus unconditionally and tied the balance to new business. The implied covenant (Count III) cannot supply the obligations the Offer Letter omits. The Wage Act claim (Count IV) fails because a discretionary, contingent

bonus is not a "wage," and because Dr. Xing, an officer of TCM's parent, is not alleged to have "the management" of TCM. The declaratory judgment and unjust enrichment counts (Counts V and VI) duplicate the contract claims.

In the alternative, any equity claim that survives belongs in China and should be dismissed on the basis of forum *non conveniens*. That is where the issuing companies, their registries and capitalization records, and the alleged nominee and shareholding arrangements are located.

## STATEMENT OF FACTS

This is a compensation dispute. The facts below come from the First Amended Complaint ("Complaint" or "Compl.") and the Offer Letter it incorporates. They are assumed true solely for purposes of this motion.

Plaintiff has been a Vice President of TCM, a New Jersey corporation, since April 25, 2022. He works under an Offer Letter dated March 14, 2022. (Compl. ¶¶ 1–2, 21.) He reports to TCM's President and CEO, Maiwei Chen, who signed the Offer Letter for TCM. (*Id.* ¶ 21; Offer Letter § 1.3.) Defendant Shanghai Xihua Scientific Co., Ltd. ("Shanghai Xihua"), a company formed and operating in the People's Republic of China ("PRC"), owns 60% of TCM. (Compl. ¶¶ 2, 4.) Dr. Xing is Shanghai Xihua's founder, Chairman, legal representative, and General Manager. He signed the Offer Letter as Shanghai Xihua's Chairman. (*Id.* ¶¶ 3, 21.)

**1. The Bonus**

Section 2.4 of the Offer Letter provides that Plaintiff's "target bonus is up to 30% of [his] Total Annual Base Package," and that "[t]he actual amount of bonus payout will be determined by TCM and its parent company if any based on TCM's overall performance and [his] personal performance." (Offer Letter § 2.4; Compl. ¶ 41.)

Plaintiff received full target bonuses for FY2022 and FY2023. (Compl. ¶ 40.) He then requested his FY2024 and FY2025 bonuses. On July 1, 2026, Dr. Xing said he needed to consult the board. (*Id.* ¶ 47.) On July 8, 2026, he advised that the company would pay 50% of the target bonus for both years without condition. It would pay the remaining 50% if Plaintiff secured signed agreements for two new client contracts. (*Id.* ¶ 49.) TCM paid the unconditional $111,860 on July 21, 2026. (*Id.* ¶ 51.)

Plaintiff does not allege that TCM's performance or his own entitled him to any particular amount. He concedes that Section 2.4 may be "construed as affording TCM broad discretion in determining Plaintiff's bonus entitlement." (*Id.* ¶ 75.) Notably, the total amount of the combined bonuses ($223,720) exceeded his contractual right to 30 percent of his annual base salary for two years. Plaintiff alleges that even though TCM apparently has the discretion to offer him a bonus in

an amount more greater than the ceiling contained in his Offer Letter, it did not have the discretion to condition a portion of the bonus on securing two clients.

**2. The Stock Options**

Section 4 of the Offer Letter provides that “Shanghai Xihua Scientific Co., Ltd, TCM’s parent company, will grant” Plaintiff an option equal to 1.5% of Xihua Clinical Services Co., Ltd. (“Xihua Clinical”) at RMB 1.00 per share, and an option on 100,000 Shanghai Xihua shares at RMB 10 per share. (Offer Letter § 4; Compl. ¶ 22.) The options vest 40% on the second anniversary of employment and 60% on the fifth, in April 2027. Shanghai Xihua guarantees a minimum value of $3 million for the stock “by the time [the] stock option is fully vested,” to be satisfied, if necessary, by additional stock. (Offer Letter § 4; Compl. ¶ 23.)

Plaintiff alleges that he has not received a grant agreement, option certificate, cap-table entry, or similar documentation. He also alleges that he has not been told about dilution or his current share count. (Compl. ¶¶ 26–27.) He alleges that in May 2026, Dr. Xing told Plaintiff’s spouse that a nominee held the Xihua Clinical interest and that an employee shareholding platform held the Shanghai Xihua option. (*Id.* ¶¶ 31–33.) Plaintiff does not allege that he ever attempted to exercise any option, tendered the exercise price, or was refused.

Plaintiff asserts six counts. Against TCM, he asserts breach of contract as to equity (Count I) and bonus (Count II), breach of the implied covenant (Count III),

violation of the Wage Act (Count IV), declaratory judgment (Count V), and unjust enrichment (Count VI). Against Dr. Xing, he asserts only Count IV.

## LEGAL ARGUMENT

### I. THE FIRST AMENDED COMPLAINT MUST STATE A PLAUSIBLE CLAIM, AND THE COURT MAY CONSIDER THE OFFER LETTER.

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider documents whose authenticity is not disputed and that are central to, or sufficiently referred to in, the complaint. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). The Offer Letter is the foundation of every count and is quoted throughout the First Amended Complaint, so the Court may consider it here.

A *pro se* complaint is read liberally and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008). But even a pro se plaintiff must plead "basic facts sufficient to state a claim," and may not rest on "conclusory allegations that merely parrot the relevant legal standard." *Siri v. Town of Hingham*, 662 F. Supp. 3d 44, 48 (D. Mass. 2023) (quoting *Young v. Wells Fargo Bank, N.A.*,

717 F.3d 224, 231 (1st Cir. 2013), and *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980)). Liberal construction does not let the Court supply missing facts or elements. Plaintiff's complaint also reflects counsel's involvement: he relies on counsel's pre-suit demand letters. (Compl. ¶¶ 51, 57, 60.)

Measured against these standards, the First Amended Complaint states no claim against TCM or Dr. Xing.

## II. COUNT I FAILS BECAUSE TCM HAS NO EQUITY OBLIGATION, NO BREACH IS ALLEGED, AND THE GUARANTEE HAS NOT MATURED.

Count I, asserted against Shanghai Xihua and TCM, fails as to TCM on obligation, breach, and damages.

A breach-of-contract claim requires a valid contract, breach of an obligation it imposes, and resulting damages. *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 288 (D. Mass. 2009). Where an agreement does not establish a sufficiently definite contractual obligation, it cannot support a breach-of-contract claim because the alleged obligation must be sufficiently specific to determine what was required and whether a breach occurred. *D & N Corp. v. Intoccia*, 87 Mass. App. Ct. 1129, at *5 (2015).

### A. The Equity Obligation Belongs to Shanghai Xihua, Not TCM.

Section 4 places the equity obligation on Shanghai Xihua. It begins by naming "Shanghai Xihua Scientific Co., Ltd, TCM's parent company," as the entity that

"will grant" the options. Every interest it describes is stock of Shanghai Xihua or its subsidiary, Xihua Clinical, not stock of TCM. (Offer Letter § 4.) The provision's later references to what "we will also grant" and "we will grant you more stock" must be read in that context. Only an issuer can grant options on its own shares. TCM, a subsidiary, is not alleged to have any power to issue its parent's stock. (Compl. ¶ 2.) Plaintiff himself pleads that Section 4 "obligated Shanghai Xihua to grant" the options. He also asserts Count I against Shanghai Xihua "directly," naming TCM only "to the extent established by the Offer Letter and applicable law." (*Id*. ¶¶ 62, 64.) That hedge is not a factual allegation that TCM made a promise.

Nor does the Complaint plead facts that would justify disregarding the separate identities of TCM, Shanghai Xihua, and Xihua Clinical. Massachusetts permits that only in narrow circumstances, such as where common control and disregard of corporate separateness would otherwise produce gross inequity. *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619-20 (1968). Count I should be dismissed as to TCM.

**B. Plaintiff Alleges No Breach.**

Count I also fails because Plaintiff alleges no breach.

First, an option is a right to purchase on stated terms, not a promise to deliver stock for free. The optionee "must comply with the conditions set out in the option contract" to obtain performance. *Pear v. Davenport*, 67 Mass. App. Ct. 239, 244

(2006) (citation omitted). Conditions governing the exercise of an option require strict adherence, and the optionee must "turn his corners squarely." *Westinghouse Broad. Co. v. New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 73 (1980).

Section 4 of the Offer Letter conditions exercise on payment of the RMB 1.00 and RMB 10.00 exercise prices. (Offer Letter § 4; Compl. ¶ 22.) Plaintiff does not allege that he tendered either price, attempted to exercise any vested option, or was refused. His proposal that Defendants buy out his equity for $1.2 million (Compl. ¶ 28) was not an exercise. His real grievance is missing paperwork, and he assumes but does not plead that PRC law mandates such paperwork. (*Id.* ¶¶ 26–27.) But he identifies no term of Section 4 requiring a grant agreement, certificate, or registration as a precondition to exercise.

Second, Plaintiff alleges nothing that TCM did or failed to do with respect to the options. Every equity communication he describes was with Dr. Xing, acting for Shanghai Xihua. (Compl. ¶¶ 28–39.)

**C. The Guarantee Has Not Matured and Damages Are Speculative.**

The $3 million guarantee applies only "by the time [the] stock option is fully vested." That is Plaintiff's fifth anniversary, in April 2027. Even then, the guarantee is satisfied by additional stock, not cash. (Offer Letter § 4; Compl. ¶¶ 21, 23.) Plaintiff concedes the guarantee is "applicable upon full vesting in April 2027."

(Compl. ¶ 67.) He cannot sue now for performance not yet due. Nor can he accelerate it by labeling the alleged nominee arrangement a "repudiation" (*id.* ¶ 65(d)). Massachusetts does not recognize an action for anticipatory repudiation of a future performance obligation. See *Daniels v. Newton*, 114 Mass. 530, 533 (1874). Any damages tied to the unvested tranche or the guarantee are therefore speculative.

## III. COUNT II FAILS BECAUSE THE BONUS IS DISCRETIONARY AND TCM EXERCISED THAT DISCRETION.

Count II, asserted only against TCM, fails because Section 2.4 commits the bonus to the employer's discretion, and Plaintiff alleges that the discretion was exercised.

Section 2.4 of the Offer Letter sets a "target bonus" of "up to 30%" of base. It provides that "[t]he actual amount of bonus payout will be determined by TCM and its parent company if any." Three features of that text are dispositive. "Up to" sets a ceiling, not a floor. The amount is reserved to TCM and its parent. And "if any" confirms that the award may be zero. The Offer Letter does not obligate TCM to pay *any* bonus, let alone a bonus in a particular amount.

The First Circuit affirmed dismissal of a materially similar claim. In that case, the agreement made the employee eligible for a bonus but left awards to the employer's discretion, including an award of zero. *Artuso v. Vertex Pharms., Inc.*,

637 F.3d 1, 8 (1st Cir. 2011). Language reserving that discretion cannot support a breach-of-contract claim. *Id.* The same result follows here.

Plaintiff's own allegations show that the discretion was exercised. On July 8, 2026, the company advised that it would pay 50% of the FY2024 and FY2025 target bonuses without condition and the balance if Plaintiff secured two new client contracts. TCM paid the unconditional $111,860 two weeks later. (Compl. ¶¶ 49, 51.) Nothing in Section 2.4 limits the employer to an all-or-nothing award or forbids it from conditioning an award it was never required to make. That full bonuses were paid for FY2022 and FY2023 (*id.* ¶ 40) does not convert a discretionary bonus into a guaranteed one.

Plaintiff's alternative theory fares no better. He claims the discretion was irrevocably exercised on May 16, 2026, when Dr. Xing allegedly told Plaintiff's spouse that the bonus would be paid by June 30. (*Id.* ¶¶ 44, 75.) But Count II is pleaded as a breach of Section 2.4, not of a separate oral agreement, and Plaintiff alleges no consideration for any new promise. Plaintiff also alleges that on July 1 Dr. Xing said he "needed to consult with the Company's board before proceeding." (*Id.* ¶ 47.) That confirms no final determination had been made. Because Count II identifies no obligation to pay a bonus in any particular amount, and no breach, it should be dismissed.

## IV. COUNT III FAILS BECAUSE THE IMPLIED COVENANT CANNOT CREATE RIGHTS THE OFFER LETTER DOES NOT PROVIDE.

Count III, asserted against TCM asks the implied covenant to rewrite the Offer Letter.[1]

The implied covenant protects a party's right to the fruits of the contract, but it "may not… be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004); *accord Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281, 289 (2007); *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005). The question is whether a party performed existing duties with a purpose to deprive the other of a contemplated benefit. *See Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82 (2014).

### A. Claim Regarding Stock Options.

As to equity, Count III fails for the same reason as Count I: Section 4 imposes no equity obligation on TCM. Plaintiff concedes that Section 4 does not "prescribe every administrative step or deadline" for implementation. (Compl. ¶ 80.) He asks the covenant to fill that silence with documentation, registration, and disclosure

[1] Count III is also asserted against Defendant Shanghai Xihua. It has not been served.

duties. (*Id.* ¶ 83.) That is precisely what the covenant cannot do. Plaintiff also pleads no act by TCM taken in bad faith to deprive him of an equity benefit.

**B. Bonus.**

As to the bonus, Section 2.4 expressly commits the amount, "if any," to TCM and its parent. (Offer Letter § 2.4.) The covenant does not supply terms Plaintiff was free to negotiate but did not. *Chokel v. Genzyme Corp.*, 449 Mass. 272, 276 (2007). Nor can it override an express grant of discretion. See *A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth.*, 479 Mass. 419, 434–35 (2018). Plaintiff alleges no facts showing that the discretion was exercised to deprive him of a benefit to which he was contractually entitled. Paying half of the target bonus unconditionally and tying the balance to an objective business goal is an exercise of discretion, not bad faith. (Compl. ¶¶ 49, 51.) Count III as pleaded against TCM should be dismissed.

## V. COUNT IV FAILS BECAUSE A DISCRETIONARY BONUS IS NOT A "WAGE," AND DR. XING DID NOT HAVE THE MANAGEMENT OF TCM.

Count IV asserts a claim under the Massachusetts Wage Act, M.G.L. c. 149, §§ 148, 150 (the "Wage Act"), against TCM and Dr. Xing.

**A. The Bonus Is Not a Wage.**

The Wage Act does not apply to Plaintiff's bonus theory. The statute requires prompt payment of "wages earned" and provides remedies for the unreasonable detention of wages. Mass. Gen. Laws ch. 149, §§ 148, 150; *Bos. Police Patrolmen's*

*Ass'n, Inc. v. City of Boston*, 435 Mass. 718, 720 (2002); *Weiss v. DHL Express, Inc.*, 718 F.3d 39, 47 (1st Cir. 2013). Although holiday pay, vacation pay, and definitely determined commissions fall within the statute's protection, Massachusetts courts have refused to adopt an expansive definition of "wages" that reaches discretionary compensation. *See* Mass. Gen. Laws ch. 149, § 148; *Nunez v. Syncsort Inc.*, 496 Mass. 706, 710 (2025) (contingent compensation including bonuses are not "wages"); *Weiss*, 718 F.3d at 47; *Weems v. Citigroup Inc.*, 453 Mass. 147, 153-54 (2009).

Plaintiff's bonus was not a wage. *Id.* at 154. Section 2.4 sets a ceiling ("up to 30%") and leaves the amount, "if any," to the companies' judgment. (Offer Letter § 2.4.) That is a contingent compensation opportunity, separate from the fixed salary set in Section 2.1.

Nor was the unpaid portion of the FY2024/25 bonus presently due. Plaintiff alleges that TCM paid $111,860 and conditioned any further bonus on securing two new client contracts. (Compl. ¶¶ 49, 51.) In *Weiss*, the First Circuit held that a discretionary bonus was not "earned" where the employer was under no obligation to pay it because the applicable contingencies had not occurred. 718 F.3d at 47-48. So too here: the alleged unpaid bonus was discretionary, contingent, and not definitely determined or presently due. It therefore does not fit within the Wage Act,

and Count IV should be dismissed against TCM and Dr. Xing to the extent it rests on Plaintiff's bonus theory.

**B. Dr. Xing Is Not Personally Liable Under The Wage Act.**

The Wage Act reaches a corporation's "president and treasurer" and "any officers or agents having the management of such corporation." M.G.L. c. 149, § 148; *Segal* v. *Genitrix, LLC,* 478 Mass. 551, 558 (2017). The defendant must be both an agent of the corporation and have "the management" of it. *Segal*, 478 Mass. at 559. Holding a managerial role over part of a corporation is not enough. *Id.*; *Wiedmann v. Bradford Grp., Inc.*, 444 Mass. 698, 711-12 (2005).

Board status alone does not suffice: "[n]either the board of directors nor an individual director… is, as such, an agent of the corporation." *Segal*, 478 Mass. at 562 (quoting Restatement (Second) of Agency § 14C (1958)); *see Estate* of *Moulton v. Puopolo*, 467 Mass. 478, 487-88 (2014).

Dr. Xing is not even alleged to be a TCM director. Plaintiff's assertion that Dr. Xing had "the management of" TCM (Compl. ¶ 89) is a legal conclusion. The pleaded facts tie Dr. Xing to Shanghai Xihua, as its founder, Chairman, legal representative, and General Manager, and show that he signed the Offer Letter in that capacity. *(Id.* ¶¶ 3, 21.*)* TCM signed through its President and CEO, Maiwei Chen, to whom Plaintiff reports. (*Id*. ¶ 21; Offer Letter § 1.3.) A parent-company chairman's involvement in a subsidiary employee's bonus communications does not

plausibly make him an officer or agent having the management of the subsidiary as a whole. (Compl. ¶¶ 44, 47, 49.) Count IV should be dismissed as to Dr. Xing on this independent ground.

## VI. COUNTS V AND VI SHOULD BE DISMISSED AS DUPLICATIVE OF PLAINTIFF'S CONTRACT CLAIMS

Plaintiff's claim for declaratory judgment (Count V) should be dismissed because it is duplicative of Count I and would provide no independent relief. The Declaratory Judgment Act is permissive: a federal court "may declare the rights and other legal relations" of an interested party, 28 U.S.C. § 2201(a), but it has discretion to decline declaratory relief where the declaration would serve no useful purpose. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–89 (1995). Courts dismiss declaratory counts that merely restate contract claims, seek the same determination of rights, and would not clarify or settle anything beyond the substantive count. *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 325–26 (N.D.N.Y. 2017); *Woolley v. Groft*, 653 F. Supp. 3d 171, 179 (M.D. Pa. 2023). That is Count V: it asks the Court to declare Plaintiff's rights under the same Section 4 options that form the basis of Count I. (Compl. ¶¶ 62, 98-99.) A ruling on Count I will necessarily resolve those rights, and Count V adds no separate remedy. Count V is also premature to the extent it seeks a declaration concerning the 60% tranche and minimum-value guarantee, which do not vest or mature until April 2027. (Offer Letter § 4; Compl. ¶ 23.)

Count VI fails because an express contract governs the compensation at issue. Unjust enrichment does not lie where a valid contract defines the parties' obligations or where the plaintiff has an adequate remedy at law. *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 931 (1st Cir. 2014); *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 162 (1st Cir. 2005); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017); *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010). Plaintiff pleads the Offer Letter as a "valid, binding, and enforceable written contract." It governs the salary, bonus, option, vesting, and guarantee terms he seeks to enforce. (Compl. ¶¶ 21–23, 41, 62; Offer Letter §§ 2.1, 2.4, 4.) Labeling Count VI "alternative" (Compl. ¶ 101) does not save it where the contract's existence is undisputed. *See Shaulis*, 865 F.3d at 16. Counts V and VI should be dismissed.

## VII. IN THE ALTERNATIVE, THE EQUITY CLAIMS SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS.

Forum non conveniens has continuing application in federal court where the alternative forum is abroad, and it permits dismissal where an adequate foreign forum has jurisdiction and trial in the chosen forum would impose oppression or vexation out of proportion to Plaintiff's convenience, or where the chosen forum is inappropriate because of the Court's administrative and legal problems. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007). The defendant must identify an available and adequate alternative forum and show that

the private and public interest factors strongly favor dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 255–56 (1981); *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000).

Those requirements are satisfied for the claims concerning equity or ownership interests in Shanghai Xihua and Xihua Clinical. The Offer Letter concerns options in those non-TCM entities, states RMB exercise prices, vests the options over Plaintiff's employment anniversaries, and ties the minimum-value guarantee to full vesting. (Offer Letter § 4; Compl. ¶¶ 22–23, 64.) China is the natural forum for those claims because Shanghai Xihua is organized under PRC law, headquartered in Shanghai, and alleged to control Xihua Clinical. (Compl. ¶¶ 4-5.) A forum is adequate when it can address the type of claim asserted and the defendant is amenable to process there; a less favorable body of foreign law does not make the forum inadequate. *Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 108 (1st Cir. 2020).

The private-interest factors strongly favor China. Those factors include access to proof, availability of compulsory process for unwilling witnesses, cost of obtaining willing witnesses, enforceability, and practical trial burdens. *Sullivan v. Starwood Hotels & Resorts Worldwide, Inc.*, 949 F. Supp. 2d 324, 328 (D. Mass. 2013); *Iragorri*, 203 F.3d at 12. Plaintiff's equity theory turns on whether PRC-company interests were granted, registered, diluted, adjusted, held through a nominee, placed in an employee shareholding platform, or reflected in capitalization

records. (Compl. ¶¶ 26–39, 57–58, 65–69.) The key proof therefore consists of Shanghai Xihua and Xihua Clinical corporate records, PRC registry materials, cap tables, board or shareholder approvals, ESOP or shareholding-platform records, dilution calculations, IPO diligence materials, and evidence concerning the alleged nominee arrangement. (Compl. ¶¶ 30–39, 52–58, 65–69.) The Offer Letter also made China part of Plaintiff's employment from the outset, stating that his position was based in the United States and China and that he was expected to work approximately three months in China and nine months in the United States each year. (Offer Letter § 1.2.) China is therefore not a random or unfair forum for the equity dispute; it is where the relevant companies, corporate records, shareholding mechanisms, and much of the expected witness proof are centered.

The public-interest factors point the same way. They include administrative burdens, the local interest in the controversy, and avoiding unnecessary foreign-law problems. *Iragorri*, 203 F.3d at 12; *Piper Aircraft*, 454 U.S. at 241 n.6. The formation, registration, and internal affairs of Shanghai Xihua and Xihua Clinical are governed by PRC law. The equity claims would require this Court to adjudicate ownership-equivalent rights in those PRC entities, evaluate alleged nominee and employee-shareholding arrangements, and value interests by reference to PRC-company capitalization. (Offer Letter § 4; Compl. ¶¶ 3–5, 22–23, 32–39, 52–58, 64–69, 98–99.) The Massachusetts contacts concern recruitment and compensation

communications, not the ownership questions at the heart of the equity claims. The home-forum presumption is important but not dispositive. See *Piper Aircraft*, 454 U.S. at 255-56. If any equity claim survives, it should be dismissed in favor of a PRC forum.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the First Amended Complaint as to TCM Groups Inc. and Dr. Jinsong Xing. In the alternative, any equity-based claims that survive should be dismissed under forum non conveniens in favor of a PRC forum.

Respectfully submitted,

<u>/s/ David I. Brody</u>
David I. Brody, BBO #676984
SHERIN AND LODGEN LLP
One Lincoln Street, 14th Floor
Boston, Massachusetts 02111
617.646.2000
dibrody@sherin.com
*Attorney for Defendants TCM Groups Inc. and Dr. Jinsong Xing*

LUCOSKY BROOKMAN LLP
101 S Wood Ave,
Iselin, NJ 08830
732.395.4400
Willard C. Shih
NJ Bar No. 037121996
wshih@lucbro.com
*Pro Hac Vice Application Forthcoming*

Dated: October 9, 2026

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be electronically mailed to those indicated as non-registered participants on the date specified below.

Dated: October 9, 2026

/s/ David I. Brody
David I. Brody